**BRUBACHER EXCAVATING, INC., Appellee**

v.

**COMMERCE BANK/HARRISBURG, N.A., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 2009.

Filed April 23, 2010.

Thomas O. Williams, Camp Hill, for appellant.

Jonathan H. Rudd, Harrisburg, for appellee.

BEFORE: MUSMANNO, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY SHOGAN, J.:

¶ 1 Commerce Bank/Harrisburg, N.A. ("Appellant") appeals from the order entering summary judgment in favor of Brubacher Excavating, Inc. ("Appellee"). Because we hold that the trial court erred in awarding prejudgment interest, we vacate and remand for modification of the judgment consistent with this Opinion.

¶ 2 The trial court set forth the relevant factual and procedural background of this case as follows:

### I. Background

The facts of this case are undisputed.[1] This action arises out of the construction of a branch bank of Commerce Bank/Harrisburg, N.A. ("[Appellant]"), located at 1461 Manheim Pike, Lancaster, Pennsylvania (the "Property"). Manheim Equities is the owner-in-fee of the Property, and [Appellant] is the tenant. Manheim Equities, as lessor, assigned its interest in the lease to Liberty Bank.

---

1. All material facts are set forth in the joint stipulation of facts prepared by the parties in June 2008 and attached to [Appellant]'s motion for summary judgment as Exhibit "1[']".

On September 6, 2006, [Appellant] entered into a written contract with Premier Construction, Inc. ("Premier") to construct the branch bank. Prior to permission or authority being given by Manheim Equities or [Appellant] to Premier for the commencement of work on the project, [Appellant] caused to be filed in the Prothonotary's Office of the Court of Common Pleas of Lancaster County on October 3, 2006, a Stipulation Against Liens which was dated September 29, 2006. The Stipulation Against Liens was filed to Docket No. CI–06–09679 and was in conformance with all requirements of the Mechanics' Lien Law then in effect. Accordingly, as of October 3, 2006, this Stipulation could have been reviewed by any and all subcontractors and sub-subcontractors who were to perform work on the Property.

On November 3, 2006, Premier entered into a subcontract with McElroy Contractors, LLC ("McElroy"), whereby McElroy was to perform certain site work at the Property for an estimated $116,815.00. McElroy in turn subcontracted a portion of its work to Brubacher Excavating, Inc. ("[Appellee]"), on or about April 27, 2007, to perform asphalt paving on the project at a bid price of $45,689.00.

[Appellee] completed asphalt paving on the Property on or about May 21, 2007, and invoiced McElroy in the amount of $42,976.45, which represented the cost of labor and materials.[2] McElroy has not paid any amount to [Appellee] for its work on the project. McElroy was required to pay [Appellee] within 30 days of its invoice dated May 21, 2007, or by June 20, 2007. Premier has paid McElroy for all amounts due and owing under its subcontract with McElroy except for $20,224.31 that it is still retaining from McElroy.

---

2. [Appellee's] invoice of May 21, 2007 was for less than the subcontract amount as a result of certain adjustments in the quantity of materials and services actually performed.

On or about August 27, 2007, [Appellee] notified [Appellant] and Premier in writing that it intended to file a mechanics['] lien on the project. [Appellee] filed its mechanics['] lien claim on October 19, 2007, and subsequently filed a complaint in action upon the mechanics['] lien claim on November 14, 2007. [Appellant] filed preliminary objections on December 4, 2007, which were overruled by Order of this [c]ourt dated February 4, 2008. [Appellant] then filed an answer with new matter on February

21, 2008, to which [Appellee] filed a reply on February 26, 2008.

A petition to discharge the mechanics['] lien on deposit of security pursuant to 49 P.S. § 1510 was filed by [Appellant] on April 14, 2008. A rule was entered upon [Appellee] on April 28, 2008, to show cause why [Appellant] was not entitled to the relief requested in its petition. Ultimately, an order was entered on July 10, 2008, granting the petition to discharge and directing the Prothonotary, upon [Appellant's] depositing of the surety bond attached to the petition as Exhibit "A," to discharge [Appellee's] mechanics['] lien claim filed in the Office of the Prothonotary. The Bond to Discharge Existing Lien was filed on July 11, 2008.

Meanwhile, the case was certified as ready for trial and a pretrial conference was held on June 5, 2008, during which the parties agreed that a trial was unnecessary and that this matter could be disposed of on cross-motions for summary judgment. The parties further agreed to enter into stipulations of fact prior to the filing of the cross-motions for summary judgment by the parties. [Appellant's] motion and brief in support thereof were filed on July 25, 2008. [Appellee] filed its cross-motion for summary judgment and brief in opposition to [Appellant's] motion for summary judgment and in support of its motion for summary judgment on September 5, 2008. Reply briefs were filed by [Appellant] and [Appellee] on October 2, 2008, and October 8, 2008, respectively.

Trial Court Opinion on Cross Motions for Summary Judgment, 12/22/08, at 1–4.

¶ 3 In its Order entered on the same date, the trial court granted summary judgment in favor of Appellee Brubacher Excavating, Inc., and entered judgment in the amount of $42,976.45, together with pre-judgment interest at the statutory rate of 6% from June 20, 2007 to the date judgment was entered. Trial Court Order, 12/22/08.

¶ 4 Appellant then filed the instant appeal, which presents the following questions for our review:

1. Whether the amendments to the Pennsylvania Mechanics' Lien Law, 49 P.S. § 1101 *et seq.*, which became effective after [A]ppellant Commerce Bank/Harrisburg N.A. entered into a construction contract with the general contactor, can be properly and legally interpreted so as to retroactively create a right to a mechanic's lien by a sub-subcontractor when no such right existed at the time Commerce entered into the construction contract?

2. Whether the amendments to the Pennsylvania Mechanics' Lien Law, 49 P.S. § 1101 *et seq.*, retroactively voided a stipulation against liens that was filed by Commerce prior to the effective date of the amendments?

3. Whether a properly filed stipulation against liens[,] which placed all potential claimants, including Brubacher, on notice that the property was subject to a stipulation against liens, was limited in its effect because it contained a description of a portion of the work to be performed?

4. Whether a contractor may recover interest as part of a mechanics' lien claim when the Mechanics' Lien Law provides proper claimants with a statutory right to assert a lien to secure payment for the value of labor and materials only?

Appellant's Brief at 4.

¶ 5 In reviewing the grant of a motion for summary judgment, we use the following standard and scope of review:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Erie Insurance Exchange v. Larrimore,* 987 A.2d 732, 736 (Pa.Super.2009).

¶ 6 Furthermore, Appellant's claim concerns the proper interpretation of the Pennsylvania Mechanics' Lien Law, 49 P.S. §§ 1101–1902. Therefore, the Statutory Construction Act of 1972 ("Statutory Construction Act" or "Act"), 1 Pa.C.S. § 1501 *et seq.*, controls.

Under the Act, it is fundamental that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,]" and that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). In this regard, the Act instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the

mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations. 1 Pa.C.S. § 1921(c).

The Act provides that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage"; and that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). Further, if the General Assembly defines words that are used in a statute, those definitions are binding. The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1),(2),(5). Moreover, the Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled. 1 Pa.C.S. §§ 1933–1936.

*Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth Dept. of General Services,* 593 Pa. 580, 591, 932 A.2d 1271, 1278 (2007) (citations omitted).

¶ 7 The trial court summarized Pennsylvania's Mechanics' Lien Law, as of the date of the trial court's disposition of this matter, as follows:

This law provides the right to lien a property for the payment of all debts due by an owner to the contractor or by the contractor to a subcontractor for labor or materials. 49 P.S. § 1301. The Statute historically provided contractors and subcontractors with a statutory method to secure payment for their

work or materials. In order for a contractor or subcontractor to file a lien against an owner's property under the Statute, the claim had to be filed with a local prothonotary within four months of the work's completion. Properly filed mechanics' liens would then become superior in priority to previously filed liens on the property, including mortgage liens.

As a protective measure for other lien holders, the Statute provided that contractors could, prior to the commencement of work, waive the right to such subsequent liens by entering into a written agreement with the property owner. This "waiver of liens" or "stipulation against liens" was also binding on subcontractors. Lenders, owners and title insurers came to require the execution and filing of such lien waivers prior to the commencement of construction projects, in order to insure that contractors' liens would not be superior to prior filed liens.

The Mechanics' Lien law of 1963 was amended by General Assembly House Bill 1637, also known as Act 52, which was signed into law by Governor Edward G. Rendell on June 29, 2006.[1] The amendments to the Mechanics' Lien Law became effective approximately six months later on January 1, 2007. These amendments significantly changed Pennsylvania law on the use of stipulations against liens. Prior to January 1, 2007, the Mechanics' Lien Law allowed owners and contractors to waive a subcontractor's right to file a mechanics' lien by simply filing a stipulation against liens with the Prothonotary prior to the subcontractor performing any work.[ ] The Pennsylvania Legislature amended the law to declare that such waiver of lien rights are against public policy, unlawful and void. Specifically, the Mechanics' Lien Law was amended to provide that:

> [e]xcept as provided in Subsection *(a)(2), a waiver by a subcontractor* [2] *of lien rights is against public policy, unlawful and void,* unless given in consideration for payment for the work, services, materials or equipment provided and only to the extent that such payment is actually received, or unless the contractor has posted a bond guaranteeing payment for labor and materials provided by subcontractor[s].

49 P.S. § 1401(b)(2)(emphasis added).[3] Thus, waivers of liens entered into *prior*

---

1. The Mechanic's Lien Law was again amended, after the trial court decided this matter, by General Assembly Senate Bill 563 which was approved August 11, 2009 and became effective October 13, 2009. Although not relevant for purposes of this appeal, we note the 2009 amendments because they changed the language of some of the statutory sections cited by the trial court.

2. The Act, as amended in 2006, defines "subcontractor" as follows:
   (5) "Subcontractor" means one who, by contract with the contractor, *or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor,* express or implied, erects, constructs, alters or repairs an improvement or any part

thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman. The term does not include an architect or engineer who contracts with a contractor or subcontractor, or a person who contracts with a materialman or a person who contracts with a subcontractor not in direct privity of a contract with a contractor.
   49 P.S. § 1201 (amendment in emphasis).

3. Subsection (a) of 49 P.S. § 1401 relates to residential property and, thus, is not applicable in this case. However, as of the date of

to the commencement of construction are now prohibited by Act 52. The new terms are the same for the prohibition against waivers of liens by subcontractors "unless the contractor has posted a bond guaranteeing payment for labor and materials provided by subcontractors."

More specifically, these amendments provide subcontractors who enter into contracts after January 1, 2007 with the right to file mechanics' liens, a right that did not exist prior to the amendments to the Mechanics' Lien Law. The amendments state in § 4 of Act 52 that "[t]he amendment or addition of sections 201(14), 401 and 402 of the act *shall* apply to contracts entered into on or after the effective date of this section." (Emphasis added.) Section 5 states: "This act shall take effect January 1, 2007." *See* 49 P.S. § 1401 (Historical and Statutory Notes).

Trial Court Opinion on Cross Motions for Summary Judgment, 12/22/08, at 7–9 (citation omitted) (footnotes added).

¶ 8 In its first issue, Appellant argues that its Stipulation Against Liens filed on October 3, 2006, predates the effective date of the 2006 amendments (hereinafter referred to as "the amendments"), and, thus, waives the lien rights of every subcontractor or sub-subcontractor regardless of when their contract was signed. Appellant further argues that, because the original agreement between Appellant and Premier was entered into prior to the effective date of the amendments, to apply the amendments to its agreement with Appellee would create "retroactive" lien rights. We disagree.

¶ 9 Appellant is correct in arguing that the amendments to the Mechanics' Lien Law must be given prospective effect only. "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S.A. § 1926. However, the contract at issue was entered into after January 1, 2007. Act 52 expressly states that the amendments shall apply to contracts entered into on or after January 1, 2007. *See* 49 P.S. § 1401 (Historical and Statutory Notes). Applying the rules of the Statutory Construction Act to this statement, the language is clear and free from ambiguity. The Legislature intended the amendments to apply to *all* contracts entered into after the effective date of the amendments. Had the Legislature intended for the amendments to apply only to those contracts entered into between the owner and contractor, it could have used limiting language to do so.

¶ 10 Appellant cites to *Floors, Inc. v. Altig*, 963 A.2d 912, 917 (Pa.Super.2009) as

the trial court's disposition of this matter, 49 P.S. § 1401(a)(2) stated in pertinent part:

§ 1401. Waiver of lien by claimant
(a) Residential buildings.
          *     *     *
(2) (i) A subcontractor may waive his right to file a claim against property for the erection, construction, alteration or repair of a residential building, in which the total contract price between the owner and the contractor is less than one million dollars ($ 1,000,000), by a written instrument signed by him or by any conduct which operates equitably to estop him from filing a claim.

(ii) A subcontractor may waive his right to file a claim against the property, irrespective of the contract price between the owner and the contractor, of a residential building by a written instrument signed by him or by any conduct which operates equitably to estop him from filing a claim, provided the contractor has posted a bond guaranteeing payment for labor and materials provided by subcontractors.
49 P.S. § 1401(a). 49 P.S. § 1401(a) was further amended in 2009 to address waivers by both contractors and subcontractors of liens on residential property in a single paragraph.

support for its position that the term "contracts" in the amendments applies only to contracts between a contractor and an owner. However, Appellant misconstrues our holding in *Altig*. In *Altig*, a subcontractor entered into an oral agreement with a contractor during the spring of 2007 for the installation of flooring in a newly constructed home. The subcontractor then filed its Mechanics' Lien claim for labor, materials and interest. The trial court sustained the homeowners' preliminary objections and struck the claim upon finding that a stipulation of waiver of liens, filed on July 19, 2006, prevented any subcontractor from filing a mechanics' lien. On appeal, this Court held that the subcontractor had constructive notice of the filing of the stipulation of waiver of liens before it began work on the property and, thus, the stipulation was binding.

¶ 11 *Altig* is distinguishable from the case *sub judice* on several bases. First, a residential contract was at issue in *Altig*. As noted, *supra*, a subcontractor *may* waive its right to file a claim against residential property under 49 P.S. § 1401(a). Secondly, *Altig* involved the waiver of a subcontractor's lien rights by the contractor, rather than by the subcontractor itself. Our Court, thus, relied on Section 1402, rather than Section 1401. At the time of the trial court's decision in *Altig*, this section provided in relevant part as follows:

§ 1402. **Waiver by contractor; effect on subcontractor**

(a) **General rule.**—Provided lien rights may be waived as set forth under section 401, a written contract between the owner and a contractor, or a separate written instrument signed by the contractor, which provides that no claim shall be filed by anyone, shall be binding: but the only admissible evidence thereof, as against a subcontractor, shall be proof of actual notice thereof to him before any labor or materials were furnished by him; or proof that such contract or separate written instrument was filed in the office of the prothonotary prior to the commencement of the work upon the ground or within ten (10) days after the execution of the principal contract or not less than ten (10) days prior to the contract with the claimant subcontractor, indexed in the name of the contractor as defendant and the owner as plaintiff and also in the name of the contractor as plaintiff and the owner as defendant. The only admissible evidence that such a provision has, notwithstanding its filing, been waived in favor of any subcontractor, shall be a written agreement to that effect signed by all those who, under the contract, have an adverse interest to the subcontractor's allegation.

49 P.S. § 1402(a).

¶ 12 We assume that lien rights for the residential contract at issue in *Altig* could have been waived by the subcontractor claimant, thus making Section 1402 applicable. We, thus, agree with Appellee that our Court in *Altig* was simply determining whether a residential subcontractor's lien rights could be waived under the facts of that case. To do so, the Court first determined that a subcontractor's lien rights can be waived pursuant to Section 1401 *and* under the circumstances set forth in Section 1402. *Id.* at 918. The Court then held that the requirements of Section 1402 were met in that case because the subcontractor had constructive notice of the filing of the stipulation and the stipulation had been filed before the subcontractor began any work. *Id.* at 920.

¶ 13 Appellant is correct in noting that this Court in *Altig* did state, in *dicta*, "[a]rguably, then, the term "contracts" as it is used in the Historical and Statutory Notes to Section 1401" ... concerns the

contract which the contractor … entered into with [the] owner. *Id.* at 917. However, this Court then clarified, were that the case, "the 2006 Amendments would not be applicable herein, nor would be the prefatory passage to Section 1401(b)(1) …" *Id.*

■ ¶ 14 We, thus, agree with the trial court that Appellee, having entered into its agreement almost four months after the effective date of the amendments, rightfully believed that the amendments would apply to its contract. The intent of the Legislature is clear; a waiver by a subcontractor of lien rights for agreements entered into after January 1, 2007 is unlawful unless the requirements of either Section 1401(a) or 1401(b)(2) are met.[4] A waiver by a contractor of a subcontractor's lien rights is unlawful unless the requirements of Section 1402(a) are met.[5]

■ ¶ 15 Because Appellee's sub-subcontractor agreement was entered into after January 1, 2007, the Stipulation Against Liens filed by Appellant did not operate to waive Appellee's lien rights. This interpretation of the Legislature's intent does not create retroactive lien rights as no lien rights would be available to those contractors and subcontractors who entered into agreements prior to January 1, 2007. The Stipulation Against Liens filed by Appellant is still valid as to all agreements which were signed prior to the effective date of the Mechanics' Lien Law amendments on January 1, 2007.[6]

■ ¶ 16 Appellant next claims that the trial court's interpretation of the Legislature's intent in the Act 52 amendments, in effect, retroactively voided Appellant's Stipulation Against Liens. The trial court's interpretation of the amendments does not "retroactively" void Appellant's Stipulation Against Liens. As stated *supra*, Appellant's stipulation is still valid as to all contractors and subcontractors who entered into their agreements prior to January 1, 2007. Under the trial court's interpretation of the Legislature's intent, Appellant's stipulation is void only as to

---

4. This Court also notes, as the trial court properly pointed out, prior to January 1, 2007, a sub-subcontractor, such as Appellee, had no right to file a mechanics' lien. As previously discussed, the definition of "subcontractor" was amended in Act 52 to include a person who enters into a contract with a subcontractor in direct privity of a contract with a contractor, *i.e.*, a sub-subcontractor. Appellant's Stipulation Against Liens filed in October of 2006 could not waive a right that did not exist until January of 2007. "Waiver is the voluntary and intentional abandonment or relinquishment of a *known* right." *Prime Medica Associates v. Valley Forge Insurance Company*, 970 A.2d 1149, 1156–1157 (Pa.Super.2009) (emphasis added) (citation omitted). Furthermore, this prior limitation in the definition of subcontractor arguably makes Section 1402 inapplicable in this case. As admitted by Appellant, the stipulation signed by Premier and filed by Appellant did not protect against sub-subcontractors at that time. *See* Appellant's Brief at 12.

5. In this regard, we note that the trial court's statement that "waivers entered into prior to the commencement of construction are now prohibited by Act 52" is not entirely correct. *See* Trial Court Opinion on Cross Motions for Summary Judgment, 12/22/08, at 9.

6. To the extent that Appellant argues that the trial court's interpretation of the amendments to the Mechanics' Lien Law violates Article 1 Section 17 of the Pennsylvania Constitution, we conclude such issue is waived for failure to provide notice pursuant to Pa.R.C.P. 235 and for failure to include such issue in its Rule 1925(b) Statement. ("In any proceeding in a court subject to these rules in which an Act of Assembly is alleged to be unconstitutional … the party raising the question of constitutionality … shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice." Pa.R.C.P. 235).

those contractors and subcontractors whose agreements were signed after January 1, 2007. The trial court applied the Act 52 amendments prospectively; thus, Appellant's first and second claims fail.

¶ 17 Under its third issue, Appellant claims that its Stipulation Against Liens was not limited in its effect because it contained a description of a portion of the work to be performed. More specifically, Appellant's stipulation in the case *sub judice* refers to materials and labor "necessary for cast stone work at the Leased Premises." Trial Court Opinion on Cross Motions for Summary Judgment, 12/22/08, at 13. However, because we have determined that Appellant's stipulation was not valid as to Appellee's April 2007 sub-subcontractor agreement, we need not determine whether the stipulation had a limiting effect because of the description of the work to be performed.

¶ 18 Finally, Appellant claims that the trial court erred in granting interest as part of a mechanics' lien claim. Regarding post-judgment interest, our Judicial Code states:

Section 8101. Interest on judgment:

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S.A. § 8101.

Section 201. Maximum lawful interest rate:

(a) Except as provided in Article III of this act, the maximum lawful rate of interest ... shall be six per cent per annum.

41 P.S. § 201.

¶ 19 The trial court relied on *In re Oxnard's Estate*, 152 Pa. 621, 25 A. 568 (1893)

and *Niland v. Gill*, 99 Pa.Super. 107 (1930) in awarding interest from the date the mechanics' lien claim was first filed. Trial Court Opinion on Cross Motions for Summary Judgment, 12/22/08, at 14. We find the trial court's reliance upon these cases to be misplaced. *In re Oxnard's Estate* and *Niland* were both decided long before the Mechanics' Lien Law of 1963 came into effect and, thus, do not involve interpretations of the Mechanics' Lien Law of 1963.

¶ 20 Conversely, Appellant argues that Appellee is only entitled to amounts owed for labor and materials, relying on *Artsmith Development Group, Inc. v. Updegraff*, 868 A.2d 495 (Pa.Super.2005). In *Artsmith*, a contractor who had successfully prevailed on its mechanics' lien claim made a claim for pre-judgment interest based on a contractual interest rate in excess of the statutory rate of 6%. This Court concluded that "[t]he statutory basis for a mechanics' lien expressly limits the lien to amounts owed for labor and materials only." *Artsmith*, 868 A.2d at 496. "Items other than labor and materials are more properly sought in an action for breach of the construction contract, if that contract authorizes recovery of interest and attorneys' fees." *Id.* at 497 (citation omitted). However, as noted *supra*, the contractor in *Artsmith* was seeking interest based on a contractual rate. Furthermore, the Court did not discuss post-judgment interest. Thus, *Artsmith* provides only limited guidance.

¶ 21 Rather, we find our recent decision, *Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557 (Pa.Super.2009), to be more instructive. Following a non-jury trial, the trial court in *Wyatt* entered a verdict for the subcontractors on their mechanics' lien claims. Relying solely on Mechanics' Lien law, the trial court subsequently amended the verdict to include interest from the date the mechanics' liens

were filed. On appeal, Citizens Bank claimed that the trial court erred, *inter alia,* in "not specifying the amount or rate of interest that it awarded to [Subcontractors] with any particularity [...], which should be limited to post-judgment interest at the legal rate of 6% per annum." *Id.* at 564. We agreed, holding that interest should only be awarded at the statutory rate of 6% and that it should only be applied from the date judgment was entered, pursuant to 42 Pa.C.S.A. § 8101. *Id.* at 568 (citing to *Artsmith,* 868 A.2d at 497).

¶ 22 Following the reasoning of this Court in *Wyatt,* it is clear that Appellee is entitled to interest at the statutory rate of 6% from the date judgment was entered, December 22, 2008. The trial court correctly determined that Appellee was entitled to interest at the statutory rate. However, it erred in awarding pre-judgment interest. Accordingly, the award of interest should be at the lawful statutory rate of 6% per annum and be applied from the date the judgment was entered as per 42 Pa.C.S.A. § 8101.

¶ 23 Judgment vacated. Case remanded for modification of the judgment consistent with this Opinion. Jurisdiction relinquished.