**BRICKLAYERS OF WESTERN PENNSYLVANIA COMBINED FUNDS, INC., Appellant**

**v.**

**SCOTT'S DEVELOPMENT COMPANY, Appellee.**

Laborers Combined Funds of Western Pennsylvania, as Agent for Phillip Ameris and Albert W. Betler, Trustees ad litem, Laborers District Council of Western Pennsylvania Welfare and Pension Funds, the Construction Industry Advancement Program of Western PA Fund, and the Laborer's District Council of Pennsylvania and its Affiliated Local Unions, Appellants

**v.**

Scott's Development Company, Appellee.

Superior Court of Pennsylvania.

Argued June 7, 2011.

Filed Jan. 6, 2012.

Kenneth W. Lee, Lemoyne, for appellants.

Bryan G. Baumann, Erie, for appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, GANTMAN, DONOHUE, ALLEN, LAZARUS and OLSON, JJ.

OPINION BY ALLEN, J.:

Under Pennsylvania's Mechanics' Lien Law, only a "contractor" or "subcontractor" is permitted to file a lien claim against an owner of property, 49 P.S. § 1303(a), for the payment of debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished during a project. 49 P.S. § 1301; see 49 P.S. § 1201(4), (5) (defining "contractor" and "subcontractor").

In these consolidated appeals, the trustees of employee benefit funds filed mechanics' lien claims for unpaid contributions owed to union members as a result of collective bargaining agreements between a contractor and the unions. This Court, sitting *en banc*, is asked to determine whether the trustees have standing to assert these mechanics liens. The trustee itself is not a "subcontractor" under the Mechanics' Lien Law because it did not perform work on, or furnish materials to, a project. The trustee was contractually obligated under the labor agreements to receive and collect the distributions on behalf of the unions' members. Here, the trial court dismissed the trustees' complaints for lack of standing. The trial court concluded that the union members were not "subcontractors" under the Mechanics' Lien Law because the collective bargaining agreements were not traditional subcontractor agreements, and the union members were employees and/or laborers of a contractor.

We conclude that under the applicable rules of statutory construction, the definition of "subcontractor" in the Mechanics' Lien Law is entitled to a liberal interpretation. Contrary to the trial court, we conclude that a traditional subcontractor agreement is not a mandatory prerequisite to confer "subcontractor" status. Instead, given the averments in the trustees' complaints, the trustees have sufficiently pled the existence of a necessary contract between the unions and the contractor, particularly an implied in fact contract to furnish labor. We further conclude that under the specific facts presented in this case, the unions are subcontractors and given the unique legal relationship that exists between the trustee and the union, the trustee has standing to assert a mechanics' lien claim on behalf of the union. Finally, we conclude that the trustees' mechanics' lien claims are not preempted by section 301 of the Labor Management Relations Act, 29 U.S.C.S. § 185. Accordingly, we reverse the trial court's orders dismissing the trustees' complaints and remand for further proceedings.

1. **Facts and Procedural History**

These two consolidated appeals stem from construction work that members of two different unions performed on the same property. The facts and procedural history are summarized as follows.

## A. 687 WDA 2010

Scott's Development Company ("the Defendant") owned real property located at 2225 Downs Drive in Erie County. In 2007, the Defendant retained J. William Pustelak, Inc. ("Pustelak") as a general contractor to perform construction work on the property.

Previously, on March 10, 2005, Pustelak entered into a collective bargaining agreement with Bricklayers and Trowel Trades International, Local No. 9 ("the Union"). The agreement covers work to be performed within the Union's jurisdiction as specified in the collective bargaining agreement and sets forth the precise work the Union's members are authorized to perform. Pursuant to the collective bargaining agreement, Pustelak was to pay health, welfare, retirement and/or fringe benefits to Bricklayers of Western Pennsylvania Combined Funds, Inc. ("the Trustee") for each hour of labor performed by the Union's members. The collective bargaining agreement incorporated the trust agreement between the Union and the Trustee. Under the trust agreement, the Trustee was the authorized agent to collect the contributions on behalf of the Union's members.

The Union's members thereafter performed work on the Defendant's property in accordance with the collective bargaining agreement, but Pustelak failed to pay the Trustee the required contributions. On June 4, 2009, the Trustee filed a Statement of Mechanics' Lien Claim against the Defendant, seeking recovery of $17,072.98 in unpaid contributions. The Trustee alleged that the Union's members "performed bricklayer services, including but not limited to the construction of inside partition block walls; construction of two stairwells; installation of first floor cultured stone work; and construction of block and cultured, three sided, stone enclosures for dumpster, all of which were incorporated into or utilized for the improvement on [the property.]" Statement of Mechanics' Lien, 6/04/09, at ¶ 8. On July 7, 2009, the Trustee filed a Complaint to Enforce Mechanics' Lien Claim.

In response to the complaint, the Defendant filed a preliminary objection in the nature of a demurrer, claiming that the Trustee lacked standing. The Defendant argued that the Trustee could not assert a mechanics' lien claim on behalf of the Union's members because the Union's members themselves were not "subcontractors" as defined by the Mechanics' Lien Law. Specifically, the Defendant argued that the Union's members were employees and/or laborers of a contractor (Pustelak), as opposed to "subcontractors."

## B. 688 WDA 2010

On July 1, 1987, Pustelak and another union, the Laborers District Council of Western Pennsylvania ("the Union"), entered into a collective bargaining agreement, whereby Pustelak agreed to employ the members of the Union for certain construction work. The agreement covered work to be performed within the Union's jurisdiction as specified in the collective bargaining agreement, and sets forth the specific type of work to be performed by the Union's members. Under the collective bargaining agreement, Pustelak was obligated to pay contributions in the form of health, welfare, retirement and/or fringe benefits to Laborers Combined Funds of Western Pennsylvania ("the Trustee") based upon the Union members' hourly pay rate. The collective bargaining agreement incorporated a trust agreement between the Union and the Trustee. Pursuant to the trust agreement, the Trustee was the authorized agent to collect contributions on behalf of the Union's members.

In 2008, Pustelak retained the Union's members to work on the project on the Defendant's property. The Union's members performed labor on the construction project in accordance with the collective bargaining agreement, but Pustelak failed to pay the required contributions. On June 3, 2009, the Trustee filed a Statement of Mechanics' Lien Claim against the Defendant, seeking recovery of $24,935.73 in unpaid contributions. The Trustee alleged that the Union's members "performed laborer services, including but not limited to stone work, grouting and block work on the interior and exterior walls of the entry way; construction and relocation of scaffolding; conveyance of materials; mixing of mortar; and operation of forklifts, all of which were incorporated into or utilized for the improvement on [the property]." Statement of Mechanics' Lien, 6/03/09, at ¶ 8. On July 1, 2009, the Trustee filed a Complaint to Enforce Mechanics' Lien Claim.

In response to the complaint, the Defendant raised a preliminary objection in the nature of a demurrer, claiming that the Trustee lacked standing. The Defendant contended that the Trustee could not assert a mechanics' lien claim on behalf of the Union's members because the Union's members were not "subcontractors" under the Mechanics' Lien Law. The Defendant argued that the Union's members were not "subcontractors," but rather, were employees and/or laborers of Pustelak.

On March 25, 2010, the trial court sustained the Defendant's preliminary objections and dismissed the complaints in both cases (the appeals at 687 WDA 2010 and 688 WDA 2010). The trial court reasoned as follows:

The Court holds that [the Trustees] do not meet the statutory definition of 'sub-contractor,' and thus, lack standing to assert a mechanics' lien claim. The union members providing the [ ] services are not the employees of the Unions or the [Trustees], but rather, are the employees of Pustelak. The Unions and the [Trustees] are merely the representatives of the employees. The Court does not view the [collective bargaining agreements] as a subcontractor agreement. Rather, it is an agreement, made of behalf of the contractor's employees, which defines working conditions, compensation, and other terms.

Trial Court Order and Opinion (T.C.O.), 3/25/10, at 2.[1]

The trial court, therefore, concluded that the Unions' members were not "subcontractors" under the Mechanics' Line Law for two reasons: (1) the Unions' members were employees and/or laborers of Pustelak, and (2) the collective bargaining agreements were not subcontractor agreements. Because the Unions' members were not "subcontractors," the trial court concluded that the Trustees also were not "subcontractors."

At appeals 687 WDA 2010 and 688 WDA 2010, the Trustees raise identical issues for our review:

[1.] Whether [the Trustee], as an agent or fiduciary on behalf of union members pursuant to a collective bargaining agreement and/or the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.*, is a proper claimant or has standing to assert a mechanics' lien claim against [the Defendant's] property for unpaid benefit contributions that were to have been paid to [the Trustees] on behalf of the union

---

1. For purposes of these appeals, we refer to the appellants collectively as the Trustees, the appellees as the Defendant, and the members of the two Unions as the Unions' members.

members who performed work on [the Defendant's] property[?]

[2.] Whether [the Trustees] are a 'subcontractor' as defined by Section 1201(5) of the Pennsylvania Mechanics' Lien Law, 49 P.S. § 1201(5)[?]

[3.] Whether the Trial Court's holding creates a restriction upon the [Trustee's] ability to recover unpaid contributions under a collective bargaining agreement which restrictions are prohibited by the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.*[?]

Brief for the Trustee (687 WDA 2010) at 3; Brief for the Trustee (688 WDA 2010) at 3.

 Our standard of review for an order dismissing a mechanics' lien claim based upon a preliminary objection in the nature of a demurrer is as follows:

When reviewing the dismissal of a [mechanics' lien claim] based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 282 (Pa.Super.2010) (quoting *Burgoyne v. Pinecrest Community Ass'n*, 924 A.2d 675, 679 (Pa.Super.2007)).

 "In Pennsylvania, a party seeking judicial resolution of a controversy must establish as a threshold matter that he has standing to maintain the action." *Johnson v. Am. Std.*, 607 Pa. 492, 8 A.3d 318, 329 (2010). Where a statute delineates the class of members who can assert a claim under the statute, standing is governed by the language of the statute itself. *See Petty v. Hosp. Serv. Ass'n of Northeastern Pa.*, —— Pa. ——, 23 A.3d 1004, 1008 (2011). "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Johnson*, 607 Pa. 492, 8 A.3d at 326.

In their briefs, the Trustees maintain that they have standing to assert a mechanics' lien claim on behalf of the Unions' members for fringe benefit contributions owed by Pustelak. The Trustees initially argue that the definition of "subcontractor" should be liberally construed, and that substantial compliance with the definitional elements is enough to invoke protection under the Mechanics' Lien Law. To support its position, the Trustees claim that the modern version of the Mechanics' Lien Law was enacted in 1963, and that under 1 Pa.C.S.A. § 1928(a) and (c), the statute must be liberally construed to promote justice.

The Trustees also argue that the collective bargaining agreements and Pustelak's hiring decisions constituted "contracts" between the Unions and Pustelak to furnish labor. The Trustees reason that because Pustelak was a general contractor that hired the Unions to perform work on the construction project, the Unions were "subcontractors" for purposes of the Mechanics' Lien Law. To support their contention, the Trustees argue that according to the plain language of the definition of "subcontractor," all that is required is that one have a contract with a contractor and

furnish labor toward an improvement. Finally, the Trustees maintain that the trial court's decision placed an impermissible restriction on their ability to collect contributions, and thus, violated ERISA.

In response, the Defendant asserts that the Unions' members are not "subcontractors" under the Mechanics' Lien Law, but instead, are employees of Pustelak. According to the Defendant, employees and/or laborers of a contractor are not permitted to assert a mechanics' lien claim. For support, the Defendant cites to the comment accompanying the definition of "subcontractor," which states that "[p]rior decisional law that laborers are not subcontractors, even though employed by a contractor, remains unchanged." Brief for the Defendants at 14 (citing 49 P.S. § 1201, *Comment*—JOINT STATE GOVERNMENT COMMISSION 1964 REPORT, Subdivision (5)). The Defendant claims that the collective bargaining agreements define the Unions' members as "employees," and thus conclusively established that the Unions' members were not subcontractors. Further, the Defendant maintains that the collective bargaining agreements were employment contracts and not subcontractor agreements. For these reasons, the Defendant concludes that the Unions' members were not "subcontractors" as that term is defined in the Mechanics' Lien Law. The Defendant does not address the argument that the Unions themselves were subcontractors.

In addition, the Defendant contends that this Court, consistent with prior decisions, should strictly construe the provisions of the Mechanics' Lien Law and the definition of "subcontractor." Finally, and in the alternative, the Defendant asserts that the Trustees' claims are preempted by the Labor Management Relations Act.

Upon review, we conclude that the definition of "subcontractor" in the Mechanics' Lien Law is entitled to a liberal construction. We find merit in the Trustees' plain reading approach to the definition of "subcontractor" in the Mechanics' Lien Law. We further agree with the Trustees that based upon the specific facts of these complaints, it can reasonably be inferred that the Unions had the necessary "contracts" with the contractor and furnished labor for the construction of an improvement. Finally, because, the Trustees have sufficiently alleged that the Unions were "subcontractors" as that term is defined in the Mechanics' Lien Law, we conclude that the Trustees have standing to file mechanics' liens in both cases.

In 1963, our legislature repealed the Mechanic's Lien Law of 1901, 49 P.S. § 1 (repealed), and replaced it with the "Mechanics' Lien Law of 1963." *See* 49 P.S. § 1101. With the exception of a few amendments, the Mechanics' Lien Law of 1963 (or "the Mechanics' Lien Law") remains in effect today. *See* 49 P.S. § 1101. The prevailing purpose of the Mechanics' Lien Law of 1963 is remedial: to protect the prepayment labor and materials that a "contractor" and/or "subcontractor" invest in another's property. *See Matternas v. Stehman,* 434 Pa.Super. 255, 642 A.2d 1120, 1124 (1994).

Under 49 P.S. § 1303(a), "[n]o lien shall be allowed in favor of any person other than a contractor or subcontractor, as defined herein, even though such person furnishes labor or materials to an improvement." *Id.* In its entirety, "subcontractor" is defined in 49 P.S. § 1201(5) as:

> [O]ne who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or

hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman.

*Id.*

Based upon our reading, the language of 49 P.S. § 1303(a) and § 1201(5) is clear and free from ambiguity and must be construed according to its plain and natural meaning. Pursuant to 49 P.S. § 1303(a), only those individuals who are deemed a "contractor" or "subcontractor" may file a mechanics' lien claim. Even if an individual "furnishes labor or materials to an improvement," the individual must still qualify as a "contractor" or "subcontractor," as those terms are defined in 49 P.S. § 1201(4) and (5), in order to have standing to maintain a mechanic's lien claim.

To date, there is no Pennsylvania case law that specifically determines whether the definition of "subcontractor" in the Mechanics' Lien Law of 1963 should be liberally or strictly construed. Initially, we note that in interpreting the Mechanics' Lien Law of 1963, this Court's case law is replete with reiterations of the following phrase: "Mechanics' liens were non-existent at common law, being purely of statutory origin. As they are in derogation of the common law and since they effectively represent a special remedy in favor of a unique class of creditors, our courts have generally reviewed such claims with a strict construction of the statute which created them." *Sampson–Miller Associated Cos. v. Landmark Realty Co.*, 224 Pa.Super. 25, 303 A.2d 43 (1973); *see, e.g., Security Bank & Trust Co. v. Pocono Web Press, Inc.*, 295 Pa.Super. 455, 441 A.2d 1321, 1323 (1982); *TCI Constr. Corp. v. Gangitano*, 403 Pa.Super. 621, 589 A.2d 1135, 1137–38 (1991); *Delmont Mech. Serv. v. Kenver Corp.*, 450 Pa.Super. 666, 677 A.2d 1241, 1244 (1996); *Martin Stone*

*Quarries, Inc. v. Robert M. Koffel Builders*, 786 A.2d 998, 1002 (Pa.Super.2001); *Wentzel–Applewood Joint Venture v. 801 Mkt. St. Associates*, 878 A.2d 889, 892 (Pa.Super.2005); *Clearwater Concrete & Masonry, Inc. v. W. Phila. Fin. Servs.*, 18 A.3d 1213, 1216 (Pa.Super.2011).

A close examination of these cases, and the precedent upon which they rely, reveal that the origin of the above legal proposition can be traced back to our decision in *Sampson–Miller*. To support its position, this Court in *Sampson–Miller* relied on case law from our Supreme Court interpreting the Mechanics' Lien Law of 1901, and not the current version of Pennsylvania's Mechanics' Lien Law, which was enacted in 1963. *See Sampson–Miller*, 303 A.2d at 43 (citing *Brann & Stuart Co. v. Con. Sun Ray, Inc.*, 433 Pa. 574, 253 A.2d 105, 106 (1969) (construing Mechanics' Lien Law of 1901); *McCarthy v. Reese*, 419 Pa. 489, 215 A.2d 257 (1965) (construing Mechanics' Lien Law of 1901)). It appears that our Supreme Court last employed the above precept of law in 1969, when it interpreted section 10 of the Mechanics' Lien Law of 1901, *see Brann & Stuart Co.*, 253 A.2d at 106, and has never used it when construing the Mechanics' Lien Law of 1963.

The central issue in these appeals concerns the statutory interpretation of the language defining a "subcontractor." The Statutory Construction Act, which was enacted in 1972, controls the resolution of issues related to statutory interpretation. Under 1 Pa.C.S.A. § 1928(a), "[t]he rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937." *Id.* While certain, excepted statutory provisions are subject to strict construction, *see* 1 Pa.C.S.A. § 1928(b)(1)-(8), none of which are applicable here, statutes

enacted after 1937 "shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S.A. § 1928(c).[2] In *Security Bank & Trust Co.*, a panel of this Court acknowledged, in a passing reference, that there was tension between 1 Pa.C.S.A. § 1928 and our case law stating that the Mechanics' Lien Law of 1963 was to be strictly construed because it was class legislation in derogation of the common law. *See Security Bank & Trust Co.*, 441 A.2d at 1323, n. 6. This Court has yet to directly analyze the impact, if any, that 1 Pa.C.S.A. § 1928 has on our case law.

■ Here, there can be no dispute that the Mechanics' Lien Law of 1963 was enacted after 1937. Pursuant to the plain language of 1 Pa.C.S.A. § 1928(a) and (c), the Mechanic's Lien Law of 1963 cannot be strictly construed on the basis that it is in derogation of the common law. *See* 1 Pa. C.S.A. § 1928(a), (c). This is especially true since *Sampson–Miller*, the source of the strict construction rule, erroneously rested on case law interpreting the Mechanics' Lien Law of 1901 and inaccurately transposed it to the successor statute, the Mechanics' Lien Law of 1963. As a piece of duly enacted legislation, § 1928(a) and (c) of the Statutory Construction Act trump the decisions of this Court calling for a strict construction of the Mechanics'

Lien Law of 1963 on the ground that the statute is class legislation in derogation of the common law. In sum, the Mechanics' Lien Law of 1963 was enacted subsequent to 1937. Therefore, under 1 Pa.C.S.A. § 1928(c), the statute must be "liberally construed to effect [its] objects and to promote justice," 1 Pa.C.S.A. § 1928(c), regardless of any previous case law proclamation to the contrary. *Cf. Sternlicht v. Sternlicht*, 583 Pa. 149, 876 A.2d 904, 912 (2005) ("A common law doctrine may not, after a statutory pronouncement on the same subject, continue to develop in a manner inconsistent with the statute.").

In reaching our conclusion, we recognize that under § 1962 of the Statutory Construction Act, a repealed statute will be construed "as continued in active operation" if its provisions are simultaneously reenacted in the same or substantially the same terms in another statute. 1 Pa. C.S.A. § 1962 ("Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation."). If the repealing statute substantially duplicates the repealed statute, "[a]ll rights and liabilities incurred under such earlier statute are preserved and may be enforced." *Id.*

---

**2.** In its entirety, 1 Pa.C.S.A. § 1928 provides:

(a) *Statutes in derogation of common law.*— The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937.

(b) *Provisions subject to strict construction.*—All provisions of a statutes of the classes hereafter enumerated shall be strictly construed:

(1) Penal provisions.

(2) Retroactive provisions.

(3) Provisions imposing taxes.

(4) Provisions conferring the power of eminent domain.

(5) Provisions exempting persons and property from taxation.

(6) Provisions exempting property from the power of eminent domain.

(7) Provisions decreasing the jurisdiction of a court of record.

(8) Provisions enacted finally prior to September 1, 1937 which are in derogation of the common law.

(c) *Provisions subject to liberal construction.*—All other provisions of a statute shall be liberally construed to effect their objects and to promote justice.

Similarly, under § 1961 of the Statutory Construction Act, "[w]henever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption." 1 Pa.C.S.A. § 1961. The apparent purpose of 1 Pa.C.S.A. § 1961 is to preserve any judicial interpretation that has been given to the substantive provisions of the former statute and to carry it forward, or to make it applicable, to the reenacting statute. *See Birth Ctr. v. St. Paul Companies, Inc.*, 567 Pa. 386, 787 A.2d 376, 387 (2001); *Harry C. Erb, Inc. v. Shell Constr. Co.*, 206 Pa.Super. 388, 213 A.2d 383 (1965) (stating that judicial construction of a statute becomes part of the legislation from the time of its adoption); *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of … judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

As a general matter, although the Mechanics' Lien Law of 1963 duplicates the Mechanics' Lien Law of 1901 in some respects, the Mechanics' Lien Law of 1963 was not a complete "reenactment" of the Mechanics' Lien Law of 1901. Many of the provisions of the Mechanics' Lien Law of 1901 that were included in the Mechanics' Lien Law of 1963 were revised substantively, and the Mechanics' Lien Law of 1963 contains provisions that were not included in the Mechanics' Lien Law of 1901. *See, e.g., Comments* accompanying 49 P.S. §§ 1201(7), 1301, 1302, 1303(a), 1306, 1404, 1503, 1504, 1701(c), 1705.

More importantly, the overarching provision at issue in this case, § 1303(a) of the Mechanics' Lien Law of 1963, was not present in the Mechanics' Lien Law of 1901. Rather, § 1303(a) of the Mechanics' Lien Law of 1963 was a first-time declaration of "existing decisional law," as opposed to a "reenactment" of a previous statutory provision in the Mechanics' Lien Law of 1901. *See* 49 P.S. § 1303(a)— *Comment,* Subsection(a). In the absence of a comparable statute in the Mechanics' Lien Law of 1901, § 1303(a) of the Mechanics' Lien Law of 1963 cannot be deemed a legislative reenactment for purposes of 1 Pa.C.S.A. § 1961 and 1 Pa. C.S.A. § 1962.

In addition, the definition of "subcontractor" in the Mechanics' Lien Law of 1963 differs from that found in the Mechanics' Lien Law of 1901. While the original definition of "subcontractor" in the Mechanics' Lien Law of 1963 generally tracked the language of the Mechanics' Lien Law of 1901, the definition of subcontractor in the Mechanics' Lien Law of 1963 added a sentence that "declare[d] and clarifie[d] existing law that a subcontractor of a sub-subcontractor has no right to a lien." 49 P.S. § 1303(a)—*Comment,* Subsection(5). In 2006, the definition of subcontractor in the Mechanics' Lien Law of 1963 was amended to delete this sentence, and expressly included "sub-subcontractors" within its scope-that is, one who "contract[s] with a subcontractor in direct privity of a contract with a contractor." 49 P.S. § 1201(5); *see* Act 2006–52 (H.B. 1637), P.L. 210, § 1, approved June 29, 2006, eff. Jan. 1, 2007; *Brubacher Excavating, Inc. v. Commerce Bank/Harrisburg, N.A.*, 995 A.2d 362, 366 n. 2 (Pa.Super.2010).

Ultimately, the 2006 amendment dramatically expanded the class of persons that were entitled to a mechanics' lien under the Mechanics' Lien Law of 1963— as originally enacted—and also the Mechanics' Lien Law of 1901. Through amendment, the current definition of "subcontractor" in the Mechanics' Lien Law of 1963 was significantly altered when compared to the version that was present in the Mechanics' Lien Law of 1901. *See* 1

Pa.C.S.A. § 1953 ("Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time...."). Therefore, for purposes of 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962, the amended definition of "subcontractor" in the Mechanics' Lien Law of 1963 cannot be considered as reenacting a prior provision of the Mechanics' Lien Law of 1901.

Given the above additions and revisions, the Mechanics' Lien Law of 1963, particularly the statutory provisions pertaining to a subcontractor, 49 P.S. § 1303(a) and § 1201(5), did not simultaneously reenact the Mechanics' Lien Law of 1901 "in the same or substantially the same terms." 1 Pa.C.S.A. § 1962. As a matter of statutory construction, the Mechanics' Lien Law of 1901 cannot be construed as "continued in active operation," and the Mechanics' Lien Law of 1963 cannot be interpreted as though it was adopted on the date the Mechanics' Lien Law of 1901 was enacted. 1 Pa.C.S.A. § 1962; *see* 1 Pa.C.S.A. § 1961. Consequently, the rule of strict construction embodied in the Mechanics' Lien Law of 1901, due to the fact that that law was passed prior to 1937 and was in derogation of the common law, ended when the Mechanics' Lien Law of 1963 was enacted, and does not apply to the Mechanics' Lien Law of 1963.

Moreover, to the extent that the Mechanics' Lien Law of 1963 substantially duplicates the Mechanics' Lien Law of 1901, and could be considered a "reenactment" under 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962, the plain language of 1 Pa.C.S.A. § 1928(a) and (c) nevertheless compels the conclusion that the Mechanics' Lien Law of 1963 must be liberally construed. If a repealed statute continues in active operation for purposes of 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962, the statutory result is that the rights and liabilities incurred under the repealed statute are preserved for further prosecution, and the judicial interpretations given to the provisions of the repealed statute remain in effect. However, 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962 concern the preservation of rights, liabilities and judicial construction of a repealed statute, and do not address whether the language of a repealing statute should be liberally or strictly construed based upon the date of its enactment. On the other hand, 1 Pa.C.S.A. § 1928(a) and (c) directly addresses this issue, stating that with a few exceptions that are inapplicable here, all statutes "enacted finally" after 1937 shall be liberally construed.

Even if a repealing statute "reenacts" a repealed statute for purposes of 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962, the repealing statute must still be "enacted" in its own right in order to be effective. 1 Pa.C.S.A. § 1928(a) and (c) specifically deal with the mode of interpretation that is to be afforded to statutory enactments that become official on a certain date. Because the Mechanics' Lien Law of 1963 was "enacted finally" in 1963, the statute must be liberally interpreted to effectuate its objects and promote justice. This proposition holds true irrespective of any conflicting affect that 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962 may have on 1 Pa.C.S.A. § 1928(a) and (c), by permitting a repealed statute and its accompanying judicial interpretations to continue in active operation. *See* 1 Pa.C.S.A. § 1933 (stating that in cases of conflict, the more specific statute generally controls over the more general statute). Therefore, even if the Mechanics' Lien Law of 1963 could be viewed as a "reenactment" under 1 Pa.C.S.A. § 1961 and 1 Pa.C.S.A. § 1962, the

Mechanics' Lien Law of 1963 must be liberally construed pursuant to the predominant authority—and the more specific statutes—of 1 Pa.C.S.A. § 1928(a) and (c).

For these reasons, the "derogation of common law" precept violates the commands of 1 Pa.C.S.A. § 1928(a) and (c), and should no longer be used in connection with the Mechanics Lien Law of 1963.

There is also case law in this Court's jurisprudence stating that "to effectuate a valid lien claim, the contractor or subcontractor must be in strict compliance with the requirements of the Mechanics' Lien Law." *Phila. Constr. Servs., LLC v. Domb,* 903 A.2d 1262, 1267 (Pa.Super.2006); *see, e.g., Delmont Mech. Serv.,* 677 A.2d at 1244. Conversely, there is case law to the effect that "substantial compliance" with the requirements of the Mechanics' Lien Law would suffice, thus suggesting a liberal interpretation of the statute's mandates. *Tesauro v. Baird,* 232 Pa.Super. 185, 335 A.2d 792, 794 (1975). The decisions delving into the "strict compliance" and "substantial compliance" dichotomy have primarily dealt with the notice/service and content of claim requirements of the Mechanics' Lien Law. *See, e.g., Regency Invs. v. Inlander Ltd.,* 855 A.2d 75 (Pa.Super.2004); *Denlinger, Inc. v. Agresta,* 714 A.2d 1048 (Pa.Super.1998); *Delmont Mech. Serv.,* 677 A.2d at 1244; *Castle Pre-Cast Superior Walls of Delaware, Inc. v. Strauss–Hammer,* 416 Pa.Super. 53, 610 A.2d 503 (1992). This Court, however, is unable to locate any authority regarding the standard to be applied when assessing the class of available claimants—*i.e.,* "contractors" or "subcontractors"—under the Mechanics' Lien Law.

■ Although a strict compliance standard may be used to determine certain issues of notice and/or service, we conclude that a liberal construction of the definition of "subcontractor" is necessary to effectu-

ate the Mechanics' Lien Law's remedial purpose of protecting pre-payment of labor and materials. We do so not only because 1 Pa.C.S.A. § 1928(c) requires a liberal interpretation, but also because the notice and service requirements of the Mechanics' Lien Law pertain to the creation and perfection of a lien claim (procedural requirements), while the definition of "subcontractor" relates to the substantive scope of the statute. If the Mechanics' Lien Law is to be construed to advance its remedial purpose, the scope of the statute's protection should receive a liberal interpretation, especially when it involves defining the class of available lien claimants. *Cf. Meerzon v. Erie Ins. Co.,* 380 Pa.Super. 386, 551 A.2d 1106 (1988) (stating that where a statute requires a liberal construction, there is "a pronounced propensity on the part of the court to find coverage unless equally strong legal or equitable considerations to the contrary are present") (citation omitted). Therefore, as a prefatory matter, this Court liberally construes the definition of "subcontractor" in the Mechanics' Lien Law.

We now determine whether the Unions are subcontractors pursuant to a liberal construction of the Mechanics' Lien Law. Here, the trial court found that the collective bargaining agreements were not "subcontractor agreements," but rather were employment contracts that were unrelated to the "improvement" on the Defendant's land. T.C.O., 3/25/10, at 2. As such, the trial court concluded that the Unions' members were not subcontractors because they did not enter into the necessary statutory "contract" with Pustelak. *See id.*

In order to be a "subcontractor," a person/entity must contract with the "contractor," "express or implied," for the construction of an "improvement" or the furnishing of labor to the construction of an "improvement." 49 P.S. § 1201(5).

Whether it is a contract for labor or materials, a subcontractor's contract with the contractor must relate to and involve a specific "improvement." *Id.* The Mechanics' Lien Law defines an "improvement" as "any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended." 49 P.S. § 1201(1).

The collective bargaining agreements entered into between Pustelak (the contractor) and the Unions specified the type, terms and conditions of the labor to be provided by the Unions' members, within a specified jurisdiction, which encompassed the construction of the building contemplated by Pustelak and Scott's. The Unions' members were present and working on the improvement on the Defendant's property solely by virtue of the collective bargaining agreements. In return for the provision of labor by the Unions, Pustelak agreed to pay, *inter alia,* a percentage of the Unions' members' wages to the Trustees for the Unions' members' fringe benefits.

We agree with trial court that the collective bargaining agreements do not address the construction project or "improvement" at the Defendant's property. Instead, the collective bargaining agreements establish Pustelak's obligation to the Unions to employ their members for specified types of work within the Unions' jurisdictions and generally set forth the terms and conditions of employment when the Unions' members performed work for Pustelak, without reference to any particular project or "improvement." Thus, the collective bargaining agreements govern the terms of employment for the Unions' members when Pustelak contracts for specific work within the geographical confines of the collective bargaining agreement. As such, it cannot, alone, be construed as an "express or implied" contract for the furnishing of labor specifically to the construction of an "improvement" located on the Defendant's land.

The trial court, however, overlooked another aspect to the relationship between the contractor (Pustelak) and the Unions. The collective bargaining agreements do not exist in a vacuum. Pursuant to the collective bargaining agreements, Pustelak hired the Unions' members to construct the improvement on the Defendant's property. Aside from the collective bargaining agreements, the Trustees' complaints did not explicitly aver the existence of another express contract between the Unions' members and Pustelak. The Trustees, however, alleged in their complaints that pursuant to the collective bargaining agreement, Pustelak was required to utilize the Unions' members for each project Pustelak performed or undertook in the Unions' jurisdictions (Statement of Mechanics Lien at ¶¶ 3, 5), and that the Unions' members did, in fact, perform work on the "improvement" to Defendant's property. *Id.* at ¶¶ 3, 8. From these facts, it is a natural and probable inference that the Unions furnished labor to Pustelak pursuant to the collective bargaining agreement for work to be performed on the Defendant's property, thus creating contracts implied in fact between Pustelak and the Unions for the work performed on the Defendant's property.

A subcontractor's "contract" with a contractor under 49 P.S. § 1201(5) may be "express or implied." *Id.* "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation. An express contract is formed by either written or verbal communications." *Ingrassia Constr. Co. v. Walsh,*

337 Pa.Super. 58, 486 A.2d 478, 483 n. 7 (1984). "A contract implied in fact[ ] is an actual contract, and ... arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Tyco Elecs. Corp. v. Davis*, 895 A.2d 638, 640 (Pa.Super.2006) (citation and internal quotation marks omitted). "A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed." *Ingrassia Constr. Co.*, 486 A.2d at 483. "Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." *Id.*

■ Because the Trustees alleged that the Unions provided its members who were retained by Pustelak to work on the "improvement" on the Defendant's property, and the Unions' members later worked on the improvement, the Trustees sufficiently pled implied contracts between Pustelak and the Unions. In other words, the fact that, pursuant to the collective bargaining agreement, Pustelak hired the Unions' members to work on the Defendant's property, the Unions furnished their members to perform labor on the Defendant's property, and Pustelak was required to make payments, *inter alia*, to employee benefit funds for each hour the Unions' members worked on the Defendant's property, evidences conduct that establishes an implied in fact contract between Pustelak (the general contractor) and the Unions. *See In re Home Protection Bldg. & Loan Ass'n*, 143 Pa.Super. 96, 17 A.2d 755 (1941) (finding an implied in fact contract where "[t]he [defendants] were fully informed of the nature, charac-

ter and extent of the work as rendered and accepted the benefit of appellant's services without dissent. [The appellant] performed this work with the expectation of receiving compensation and there is no evidence that the [defendants] did not intend to pay him"); *see also Young v. Young*, 164 Wash.2d 477, 191 P.3d 1258, 1263 (2008) ("[T]he elements of a contract implied in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, and (3) the defendant knows or should know the plaintiff expects payment for the work."). Therefore, for purposes of 49 P.S. § 1201(5), the Trustees have pled sufficient "implied contracts" between Pustelak and the Unions.

The Unions in this case, therefore, have adequately established that they are "subcontractors" under the Mechanics' Lien Law. Having determined that the Unions qualify as "subcontractors" in their own right, we now turn our attention to the question of whether the Trustees can maintain a mechanics' lien claim on behalf of its members.

Although the issue before this Court is unique to Pennsylvania, many of our sister states have concluded that a trustee of an employment benefit fund has standing to assert a mechanics' lien claim. *See, e.g., Forsberg v. Bovis Lend Lease, Inc.*, 184 P.3d 610 (Utah Ct.App.2008); *Twin City Pipe Trades Serv. Ass'n v. Peak Mech., Inc.*, 689 N.W.2d 549 (Minn.Ct.App.2004); *Conn. Carpenters Benefit Funds v. Burkhard Hotel Partners II*, 83 Conn.App. 352, 849 A.2d 922 (2004); *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb.App. 35, 642 N.W.2d 849 (2002); *Divane v. Smith*, 332 Ill.App.3d 548, 266 Ill.Dec. 255, 774 N.E.2d 361 (2002); *Performance Funding, LLC v. Arizona Pipe Trade Trust Funds*, 203 Ariz. 21, 49 P.3d 293 (Ct.App.2002); *National Elec. Indus. Fund v. Bethlehem Steel Corp.*, 296 Md.

541, 463 A.2d 858, 864–65 (1983); *Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.*, 63 Haw. 566, 633 P.2d 1106, 1112–13 (1981); *Dobbs v. Knudson, Inc.*, 292 N.W.2d 692 (Iowa 1980).

The courts in the above cases have statutes remarkably similar to Pennsylvania's Mechanics' Lien Law, and have based their conclusions, in large part, on the reasoning of the United States Supreme Court in *U.S. for Benefit and on Behalf of Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

In *Carter*, the Supreme Court interpreted the Miller Act, 40 U.S.C.A. § 270b, and was asked to determine whether a surety could be held liable on a payment bond furnished by a contractor. The Miller Act stated, in part, that "[e]very person who has furnished labor or material in the prosecution of the work provided for in [the construction] contract, in respect of which a payment bond is furnished under this Act, . . . shall have the right to sue on such payment bond . . . for the sum or sums justly due him[.]" *Carter*, 353 U.S. at 215, 77 S.Ct. 793. The surety in *Carter*, similar to the Defendant in this case, argued that the trustees of an employee benefit trust fund were not entitled to recover unpaid contributions "since they are neither persons who furnished labor or material, nor are they seeking 'sums justly due' to persons who have furnished labor or material." *Id.* at 218, 77 S.Ct. 793.

The Supreme Court rejected the surety's argument. The High Court found instead that the language in the Miller Act referring to a "person who has furnished labor" included trustees of an employee benefit trust fund. *Id.* Particularly, the Court concluded that the trustees not only had standing to sue in their own right, but also had standing to sue on behalf of the employees. In reaching its decision, the Court noted that the Miller Act was a remedial statute that was entitled to a liberal construction. *Id.* at 216, 77 S.Ct. 793. The Court also placed significant weight on the fact that pursuant to the labor agreements, the trustees were akin to an assignee of a contract. *Id.* at 219–20, 77 S.Ct. 793. As the Court explained:

> If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment. The master labor agreements not only created [the employer's] obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.
>
> Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much 'justly due' to the employees who have earned them as

are the wages payable directly to them in cash.

*Id.* at 219–20, 77 S.Ct. 793.

In *Dobbs v. Knudson, Inc.*, the Supreme Court of Iowa, relying on the *Carter* decision, concluded that the trustees of fringe benefit funds are proper lien claimants based upon the existence of collective bargaining agreements between the subcontractors[3] and several different unions that required the subcontractors to contribute to the unions' members' fringe benefit plans. *Id.* at 693. Because the unions' members provided the labor pursuant to the collective bargaining agreement that required payments to the trusts for the unions' members' work, the trustees had standing to file a lien for nonpayment of fringe benefits. *See id.* at 694–95. The court determined that "although the right to make the claim for labor furnished … is given in [the statute] to the person who furnishes it, the trusts have a contractual right to make the claim for those persons." *Id.* at 696.

For the reasons discussed below, we conclude that *Carter* provides strong guidance in determining whether the Trustee has standing to maintain a claim under the Mechanics' Lien Law. *See, e.g., Conn. Carpenters Benefit Funds*, 849 A.2d at 927 (collecting cases) ("Our application of the United States Supreme Court's reasoning in *Carter* to our mechanic's lien statute is consistent with that of the majority of jurisdictions that have addressed the issue

at hand when construing their mechanic's lien statutes.").

First, although the statute in *Carter* dealt with contractors' surety bonds, rather than mechanics' liens, the Miller Act embraces the same purpose of Pennsylvania's Mechanics' Lien Law to protect those who invest labor and material into another's property. Second, the language at issue in *Carter*, "person who has furnished labor," is substantially the same as the operative language of the Mechanics' Lien Law defining a "subcontractor" as one who, among other things, "furnishes labor." 49 P.S. § 1201(5). Third, the Supreme Court interpreted the relevant portions of the Miller Act liberally, and this Court utilizes a liberal interpretation to construe the definition of "subcontractor." Finally, this Court concludes, just as the Iowa Supreme Court did in *Dobbs*, that the Trustees have a contractual right under the collective bargaining agreement to make a claim in the place of the Unions for the collection of the unpaid fringe benefits for the Unions' members.

▆▆▆ For purposes of appellate review, we accept the facts of the Trustees' complaint as true and undisputed. Applying this standard, the collective bargaining agreements and the trust agreements, as in *Carter*, established a relationship between the Trustees and the Unions that is "closely analogous to that of an assignment." *Carter*, 353 U.S. at 220, 77 S.Ct. 793. The collective bargaining agreements created Pustelak's contractual obligation to

---

**3.** The statute at issue in *Dobbs* provides:

Any person, firm, or corporation who has, under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation, in the construction of a public improvement, may file, with the officer, board, or commission authorized by law to let contracts for such improvement, an itemized, sworn, written statement of the

claim for such labor, or material, service, or transportation.

A person furnishing only materials to a subcontractor who is furnishing only materials is not entitled to a claim against the retainage or bond under this chapter and is not an obligee or person protected under the bond pursuant to section 573.6.

Iowa Code Ann. § 573.7.

make contributions directly to the Trustees, and the trust agreements, which were incorporated into the collective bargaining agreements, vested the Trustees with the exclusive contractual right to collect the contributions from Pustelak. It is well settled under Pennsylvania law that an assignee of a contract has standing to assert a claim in connection with the contract. For purposes of this case, it does not matter whether the Trustees were assignees in a formal, technical sense. Akin to the trustees in *Carter*, the Trustees in this case have "an even better right to sue [for a mechanics' lien] than does the usual assignee since the [T]rustees [ . . . ] are not seeking to recover on their own account." *Id.* "The trusts have the contractual right to make the claim for those persons [who furnished the labor]." *Dobbs*, 292 N.W.2d at 696. Therefore, the Trustees had standing to assert a mechanics' lien claim for unpaid contributions to the trust fund, and the trial court's finding to the contrary was an error of law.

The Defendant, nonetheless, urges this Court to affirm the trial court's order on the alternative ground that the Trustees and/or the Unions' members' claims were preempted by § 301 of the Labor Management Relations Act (the "LMRA"). Specifically, the Defendant contends that the Trustees and/or Unions' members' mechanics' lien claims are founded on the collective bargaining agreements, and thus, are completely preempted by federal law. We disagree.

In its entirety, § 301(a) of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

§ 301 provides federal jurisdiction for controversies involving collective bargaining agreements and authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). A body of federal common law is necessary "to ensure uniform interpretation of collective bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Id.* at 404, 108 S.Ct. 1877.

The United States Supreme Court has held that § 301(a) preempts all state law claims that allege a violation of a provision of a collective bargaining agreement. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Such claims must be resolved through the grievance and arbitration procedures contained in the collective bargaining agreement or brought under § 301 of the LMRA. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 219–20, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

§ 301(a) of the LMRA also preempts all state law claims where resolution of the state law claim is "substantially dependent" on an analysis of the terms of a collective bargaining agreement. *Id.* at 220, 105 S.Ct. 1904. On the other hand, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068,

129 L.Ed.2d 93 (1994). "[T]he overriding principle is that for preemption to apply, interpretation of the [collective bargaining agreement] and not simply a reference to it is required." *In re Bentz Metal Prod. Co.*, 253 F.3d 283, 289 (7th Cir.2001) (*en banc*).

In *Bentz*, the Court of Appeals for the Seventh Circuit, sitting *en banc*, concluded that § 301 of the LMRA did not preempt union members' mechanics' lien claims under Indiana law. In that case, the union members filed liens under Indiana law to secure unpaid vacation pay (a fringe benefit) owed to them pursuant to the terms of a collective bargaining agreement. The parties stipulated that the amount owed to the union members was $12,700.38.

To determine whether the mechanics' lien claims were preempted, the *Bentz* court adopted a case-by-case factual analysis of the state law claim as it relates to the collective bargaining agreement. The court noted that the union members' contractual rights to the monies due and the amounts owed depended on the terms of the collective bargaining agreement. The court, however, emphasized that the union members' contractual entitlements to receive the monies under the collective bargaining agreement, as well as the exact amounts due under the collective bargaining agreement, were uncontested and not in dispute. In addition, the *Bentz* court explained that under prior precedent, "[t]he mere need to look to [a] [collective bargaining agreement] for damage computation is no reason to hold a state-law claim defeated by § 301." 253 F.3d at 286.

(discussing *Livadas* ). From these facts and precepts of law, the *Bentz* court concluded that resolution of the mechanics' lien claim did not require an "interpretation of a [collective bargaining agreement]" but instead, only required a "mere glance at it." *Id.* at 289. The court summarized its holding as follows:

> [T]he overriding principle is that for preemption to apply, *interpretation* of the [collective bargaining agreement] and not simply a reference to it is required. If the entitlement to wages (or other employee pay) or the amount due were at issue, the [collective bargaining agreement] would control; almost certainly, interpretation of the agreement would be necessary and ... preemption would apply. The mechanic's lien, however, is a benefit provided to workers based on a state policy protecting workers; it is a separate claim, not dependent on interpretation of the agreement for its existence even though the amount of the pay is dependent on the [collective bargaining agreement]. In this situation, the claim is not preempted.

*Id.* at 289 (emphasis in original).[4]

In *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir.2008), the Seventh Circuit clarified that interpretation of a collective bargaining agreement would not be necessary, and § 301 preemption would not apply, in the following circumstances: "(1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant [collective bargaining

---

**4.** It appears that the Seventh Circuit is the only Federal Court of Appeals to address the issue of whether a mechanics' lien law is preempted by § 301 of the LMRA. In *Bentz*, the Seventh Circuit, sitting *en banc*, reached its conclusion in a 7–5 decision and overruled a contrary three-judge decision in *In re Bluffton Casting Corp.*, 186 F.3d 857 (7th Cir.

1999). In the absence of any binding authority on this Court, we find that the majority's reasoning in *Bentz* is persuasive and well-supported by the case law of the United States Supreme Court. Therefore, in resolving the issue of federal law currently before this Court, we adopt and apply the rationale of *Bentz* to the facts of these appeals.

agreement] provisions; or (3) where reference to the [collective bargaining agreement] is only necessary for computing damages." *Id.* (internal quotations and citations omitted).[5]

Here, for purposes of a demurrer, this Court must view the allegations in the complaint as true and undisputed. In their complaints, the Trustees alleged that when calculated under the rates of the collective bargaining agreements, the Defendant owed them $17,072.98 and $24,935.73 in unpaid contributions for work that the Unions' members performed on improvements at the Defendant's property. Accepting these facts as true, there is no need to interpret the collective bargaining agreements to resolve the Trustees' mechanics' lien claims. At this stage in the proceedings, there is no issue of contractual dispute that would require interpretation of any provision of the collective bargaining agreements.

▆▆▆▆ Moreover, the Trustees' mechanics' lien claims, standing alone, do not rely upon the collective bargaining agreements for their existence. The statutory basis for a mechanics' lien expressly limits the lien to amounts owed for labor and materials only, and a mechanics' lien proceeding is not intended to settle the contractual obligations of the parties. *Artsmith Dev. Group, Inc. v. Updegraff,* 868 A.2d 495, 496 (Pa.Super.2005); *Matternas,* 642 A.2d at 1124 ("A mechanics' lien proceeding merely addresses the rights of parties vis-a-vis a parcel of property. It does not address the rights of parties vis-a-vis each other."). Rather than seeking a statutory remedy for a breach of a collective bargaining

agreement, the Trustees' mechanics' lien claims implicate implied in fact contracts for the sole and limited purpose of the Unions acquiring "subcontractor" status under 49 P.S. § 1201(5). The implied in fact contracts serve as the basis to determine the Unions' right to a lien as "subcontractors," while the facts surrounding the Unions' members work determines the extent of their unpaid labor. Consequently, the existence of a collective bargaining agreement, or any breach thereof, does not constitute a material element of the Trustees' mechanics' lien claims.

The Trustees' mechanics' lien claims, therefore, are distinct from any dispute between the parties as to the collective bargaining agreements. Like the Indiana mechanics' lien law at issue in *Bentz,* Pennsylvania's Mechanics' Lien Law is a claim that, by its very nature, is not dependent on interpretation of a collective bargaining agreement. Instead, Pennsylvania's Mechanics' Lien Law is a statutory benefit provided to workers based on a stated policy of protecting "contractors" and "subcontractors" for prepayment of labor and materials. This is true even though the collective bargaining agreements were used by the Trustees to determine, and plead in their complaints, the total amount of unpaid contributions that were owed to the Unions' members. *Bentz,* 253 F.3d at 289 (stating that a mechanics' lien claim is not "dependent on interpretation of the agreement for its existence even though the amount of the pay is dependent on the [collective bargaining agreement].");*see Hernandez v. Conriv Realty Assoc.,* 116 F.3d 35 (2d Cir.1997) (concluding that state law breach of con-

---

**5.** In *Wis. Cent., Ltd.,* the court addressed preemption under the Railway Labor Act ("RLA") as it related to the interpretation of a collective bargaining agreement. The preemption provision of the RLA, however, is substantially identical to the preemption pro-

vision of the LMRA, and precedent interpreting one is applicable when interpreting the other. *See Hawaiian Airlines v. Norris,* 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

tract claims based on a contract other than the collective bargaining agreement are not preempted even though the collective bargaining agreement would dictate the rate of pay).

██ Pursuant to *Bentz*, the Trustees' mechanics' lien claims are not preempted by § 301 of the LMRA because the mechanics' lien claims are not substantially dependent on the terms of the collective bargaining agreements. Moreover, at this stage in the proceedings, there is no material dispute as to the Trustees' and/or the Unions' members contractual rights and entitlements to receive the contributions, or the amount of the contributions as calculated by the terms of the collective bargaining agreements. *See Wis. Cent., Ltd.*, 539 F.3d at 758. Therefore, the Defendant's proposed alternative basis for affirmance lacks merit, and this Court is unable to affirm the trial court's order on preemption grounds.

Finally, due to our disposition, we need not address the Trustees' alternative argument that the trial court's decision placed a restriction on the Trustees' ability to collect the contributions in violation of ERISA.

For the above-stated reasons, we reverse the trial court's orders granting the Defendant's preliminary objections in the nature of a demurrer and dismissing the Trustees' complaints for lack of standing. We remand for further proceedings.

Orders at 687 WDA 2010 and 688 WDA 2010 reversed. Case remanded. Jurisdiction relinquished.

Judge OLSON files a Dissenting Opinion, in which Judge GANTMAN concurs in the result and Judge GANTMAN files a Dissenting Statement, in which Judge OLSON concurs in the result.

DISSENTING OPINION BY OLSON, J.:

The learned majority has concluded that the unions are "subcontractors" under the Mechanics' Lien Law ("MLL"), as the unions "furnished labor" to the contractor under implied contracts. Based on this conclusion, the majority holds that the trustees of employee benefit funds (the "Trustees" or "Appellants") have standing to assert mechanics' lien claims—on behalf of the union members—for unpaid contributions to the funds. I must, respectfully, disagree with the majority's analysis and conclusion in this case. Initially, on appeal, Appellants did not argue that the unions furnished labor under implied contracts. Rather, Appellants argue that the collective bargaining agreement ("CBA")[1] "is an express contract to provide 'labor' to [the contractor] on a 'time and/or material' basis." Appellant's Brief (687 WDA 2008) at 17; Appellants' Brief (688 WDA 2008) at 17. Since we, as an appellate court, "may not act as counsel for [ ] appellant[s] and develop arguments on [their] behalf," I believe the majority's determination in this matter constitutes error. *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 396 (Pa.Super.2011). Secondly, even if Appellants had properly raised the above argument, I disagree with the majority's conclusion that the unions are

---

1. In these consolidated appeals, two collective bargaining agreements are at issue. *See* CBA Between Erie Construction Council and International Union of Bricklayers & Allied Craftworkers, effective from 5/1/04 through 4/30/09, at Article 1; CBA Between Erie Construction Council and Laborers' District council of Western Pennsylvania, AFL–CIO, effective from 2004 through 2009, at Article 1. Given the similarity between the two agreements, throughout this dissent I will, for the most part, refer to the agreements in the singular.

"subcontractors" under the MLL as the unions did not "furnish" any labor in this case. Finally, the main issue on appeal is whether the Trustees can be considered subcontractors under the MLL—and, as the majority concludes, since the Trustees stand in the shoes of the union members, the Trustees fall within the statutory definition of "subcontractor." Yet, the individual union members are not subcontractors under the MLL. Thus, while the Trustees might stand in the shoes of the union members, this fact does not grant the Trustees subcontractor status under the MLL. In short, I would affirm the trial court orders.

The MLL defines the term "subcontractor" as:

> one who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman.

49 P.S. § 1201(5).

On appeal, Appellants argue that they fall within the statutory definition of "subcontractor" because the unions and the contractor entered into a written CBA; the CBA constitutes "an express contract to provide 'labor' to [the contractor] on a 'time and/or material' basis"; the union furnished labor under this express contract; and, since Appellants "stand in the shoes" of the union members for purposes of unpaid benefit contributions, Appellants must be viewed as having "furnished labor" to the contractor under an "express contract." *See* Appellant's Brief (687 WDA 2008) at 11–17; Appellants' Brief (688 WDA 2008) at 11–17. While I believe there are a variety of problems with this theory, I agree with the majority's rejection of Appellants' argument that the CBA constitutes an "express contract" to furnish labor on an improvement. Majority Opinion, at 29. Instead, the CBA defines the pool of qualified employees that a contractor may potentially choose to employ on future, unknown projects—and the CBA then establishes the general terms and conditions of such potential employment. The CBA neither references nor contemplates any particular project or improvement and, thus, the CBA cannot be construed as an "express contract" to "erect[ ], construct[ ], alter[ ] or repair[ ] an improvement ... or furnish labor ... thereto." 49 P.S. § 1201(5).

Since Appellants argue only that they entered into an "express contract to provide labor," I believe that the rejection of said argument should have ended any further review. Instead, the majority chose to undertake its own, independent review of Appellants' complaint and, after discerning the "natural and probable inference[s]" of the pleaded facts, the majority concluded that Appellants were subcontractors because unions furnished labor to the contractor under implied contracts. Majority Opinion, at 29–30. Respectfully, I believe that we must limit our review to the actual arguments Appellants raised on appeal. Thus, I would not consider the unargued issue of whether the unions furnished labor under implied contracts.

Moreover, even if the above issue had been raised, I disagree with the majority's conclusion that the unions are subcontractors under the MLL. Specifically, I disagree that the unions "furnished" any labor as that term is used in section 1201(5) of the MLL.

In the case at bar, the majority liberally construes the MLL to hold that a union falls within the statutory definition of "subcontractor." While I agree that—in accordance with 1 Pa.C.S.A. § 1928—we must "liberally construe [the term subcontractor] to effect [the MLL's statutory] objects and to promote justice," a liberal construction still does not allow a union to be defined as a "subcontractor" under the MLL. This is because such a construction would not "effect the [MLL's statutory] objects." 1 Pa.C.S.A. § 1928.

Pennsylvania's MLL is "intended to protect the prepayment labor and materials that a contractor [or subcontractor] invests in another's property, by allowing the contractor [or subcontractor] to obtain a lien interest in the property involved." *Artsmith Development Group, Inc. v. Updegraff*, 868 A.2d 495, 496 (Pa.Super.2005), *appeal denied* 586 Pa. 720, 890 A.2d 1055 (2005). The MLL is thus intended to protect the outlays that a contractor or a subcontractor actually contributes to a project—it protects against the risk of nonpayment for "work performed or materials provided in erecting or repairing a building." *Wyatt Inc. v. Citizens Bank*, 976 A.2d 557, 570 (Pa.Super.2009).

In the case at bar, the unions risked nothing on the project. The unions did not pay or employ the workers—rather, the collective bargaining agreements specifically declared that the workers were employees of "the Company" (*e.g.* the contractor).[2] Therefore, since the unions did not "invest" any labor in the project, it simply would not further the MLL's statutory purpose to hold that the unions "furnished labor" in this case—the unions did not "furnish" any capital outlays that needed to be protected with a security interest in the property. Thus, as I do not believe the unions "furnished labor" in this case, I would hold that the unions do not fall under the MLL's statutory definition of "subcontractor."

Finally, according to the majority, the unions are subcontractors under the MLL and, since Appellants stand in the shoes of the union members, Appellants are also subcontractors under the MLL. The problem, however, is that the majority never explains how the union members—who are defined under the collective bargaining agreements as employees of the contractor—might qualify as subcontractors under the statute. Rather, the majority jumps over this hurdle by citing to foreign law and borrowing the final conclusion from those foreign cases: that—since a trustee of an employment benefit fund "stands in the shoes" of a union member for unpaid benefit contributions—the trustee has standing to assert a mechanics' lien claim in Pennsylvania.

I believe that engrafting foreign law upon Pennsylvania's MLL is not correct. Indeed, although the majority declares otherwise, it must be emphasized that Pennsylvania's mechanics' lien statute is relatively unique to our nation. While the vast majority of our sister states explicitly grant individual workers a mechanics' lien upon the property, Pennsylvania limits the right to file a mechanics lien to "contractors" and "subcontractors." 49 P.S. §§ 1301 and 1303 [3]; *see also* 49 P.S.

---

**2.** *See* CBA Between Erie Construction Council and International Union of Bricklayers & Allied Craftworkers, effective from 5/1/04 through 4/30/09, at 1.06; CBA Between Erie Construction Council and Laborers' District council of Western Pennsylvania, AFL–CIO, effective from 2004 through 2009, at Article 1.

**3.** Indeed, section 1303(a) of the MLL provides:

> No [mechanics'] lien shall be allowed in favor of any person other than a contractor or subcontractor, as defined herein, **even though such person furnishes labor** or materials to an improvement.

§ 1201 cmt. 5 ("[p]rior decisional law that laborers are not subcontractors, even though employed by a contractor, remains unchanged"); *Guthrie v. Horner*, 12 Pa. 236 (Pa.1849) ("our mechanics' lien law never did nor never could contemplate that every man who was hired by a contractor to work at a building had a right to file a lien for his wages"). Certainly, within each of the foreign cases cited by the majority, either the respective state statutes or interpretive case law explicitly allows individual workers to assert a mechanics' lien claim for their individual work.[4] Therefore—in those foreign cases—it was logical for the courts to conclude that, since the individual workers could assert a mechanics' lien claim, and since the trustee "stood in the shoes" of the individual workers, the trustees were allowed to assert a mechanics' lien claim. The same holds true in *U.S. for Benefit and on Behalf of Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (U.S. 1957)—a case upon which the majority heavily relies. In *Carter*, the United States Supreme Court was interpreting the federal Miller Act, which provides: "[e]very person who has furnished labor or material in the prosecution of the work … and who has not been paid in full therefor … shall have the right to sue on

---

49 P.S. § 1303(a) (emphasis added).

4. *See Forsberg v. Bovis Lend Lease, Inc.*, 184 P.3d 610, 613 (Utah App.2008) (Utah Code Ann. § 38–1–3 provides: "Contractors, subcontractors, and **all other persons performing any services or furnishing or renting any materials or equipment** used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner … shall have a lien upon the property"); *Twin City Pipe Trades Serv. Ass'n v. Peak Mech., Inc.*, 689 N.W.2d 549, 551 (Minn.App.2004) (Minn.Stat. § 514.01 declares: "[w]hoever … **contributes to the improvement of real estate by performing labor,** or furnishing skill … shall have a lien upon the improvement, and upon the land"); *Conn. Carpenters Benefit Funds v. Burkhard Hotel Partners II, LLC*, 83 Conn.App. 352, 849 A.2d 922, 925–926 (2004) (Conn. Gen.Stat. § 49–33 states: "**If any person** has a claim for more than ten dollars for materials furnished or services rendered in the construction … of any building … and the claim is by virtue of an agreement with … some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands … is subject to the payment of the claim"); *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb.App. 35, 642 N.W.2d 849 (2002) (holding that, under Neb.Rev.Stat. § 52–131(1), "**an employee of a subcontractor** may file a lien against the property owner"); *Divane v. Smith*, 332 Ill.App.3d 548, 266 Ill. Dec. 255, 774 N.E.2d 361, 368 (2002) (holding that, under 770 I.L.C.S. 60/1, "**the electri-**cians would be entitled to a lien against the owners** for the fringe benefit contributions as a part of the amount due them for performance of their services … [thus, the trustees] are entitled to enforce [the rights of the electricians]"); *Performance Funding, L.L.C. v. Ariz. Pipe Trade Trust Funds*, 203 Ariz. 21, 49 P.3d 293, 295 (App.2002) (A.R.S. § 33–981(A) provides: "[E]**very person who labors** or furnishes professional services, materials, machinery, fixtures or tools in the construction … of any building, or other structure or improvement, shall have a lien on such building … for the work or labor done or professional services, materials, machinery, fixtures or tools furnished"); *Nat'l Elec. Indus. Fund v. Bethlehem Steel Corp.*, 296 Md. 541, 463 A.2d 858, 863–864 (1983) (holding: since the subcontractor had "individual contracts of hire with electrical workers[,] … **the electrical workers [were] 'subcontractors' under the [mechanics' lien act]**. Those mechanics' lien claims may be asserted … by the [t]rusts on behalf of the electrical workers"); *Haw. Carpenters' Trust Funds v. Aloe Dev. Corp.*, 63 Haw. 566, 633 P.2d 1106, 1110 (1981) (H.R.S. § 507–42 provides: "[a]**ny person** or association or persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement"); *Dobbs v. Knudson, Inc.*, 292 N.W.2d 692, 694–695 (Iowa 1980) (explaining that **individual employees** have "the right to make [a lien] claim for labor furnished on the public improvement").

such payment bond ... for the sum or sums justly due him." *Carter*, 353 U.S. at 215, 77 S.Ct. 793 *quoting* 40 U.S.C. § 270a(a)(2) (now codified at 40 U.S.C. § 3133(b)(1)) (emphasis added). Thus, and similarly to the foreign state cases cited by the majority, the *Carter* Court was able to logically hold that, as an individual worker could assert a claim under the bond, a trustee "standing in the shoes" of the individual worker could also assert a claim under the bond. *Carter*, 353 U.S. at 220–221, 77 S.Ct. 793.

For good or ill, however, Pennsylvania's MLL does not protect the labor of individual workers. Rather, by the plain terms of the statute, the MLL protects only the prepayment labor and materials that a **contractor** or **subcontractor** invests in another property. Further, even though a liberal interpretation of the term "subcontractor" might possibly include the employees of a contractor, the statutory comment declares: "[p]rior decisional law that laborers are not subcontractors, even though employed by a contractor, remains unchanged." 49 P.S. § 1201 cmt. 5. Although this comment is not law, it "may be

given weight in the construction of a statute." *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759, 765 n. 3 (1971). In the case at bar, the comment clarifies the language of the MLL and demonstrates the intent of our General Assembly. Specifically, the comment demonstrates that our MLL "never did nor never could contemplate that every man who was hired by a contractor to work at a building had a right to file a lien for his wages." *Guthrie*, 12 Pa. at 236. Instead, as the explicit language of the MLL provides, our MLL was intended to limit standing to "contractors" and "subcontractors" and to no one else "even though such person furnishes labor ... to an improvement." 49 P.S. § 1303(a).

In conclusion, even if Appellants "stood in the shoes" of the union members, such status would not provide Appellants with standing under Pennsylvania's MLL. The individual union members are simply not "subcontractors" under the MLL—and only "contractors" and "subcontractors" have standing to file mechanics' lien claims in Pennsylvania. I would affirm the orders of the learned trial judge.[5,6]

---

**5.** In the alternative, Appellants argue that section 1303(a) of the MLL is preempted by the federal Employee Retirement Income Security Act (ERISA). Section 1303(a) provides that "[n]o [mechanics'] lien shall be allowed in favor of any person other than a contractor or subcontractor, as defined herein, even though such person furnishes labor or materials to an improvement." 49 P.S. § 1303(a). According to Appellants, section 1303(a) improperly targets collective bargaining agreements and "any ERISA multi-employer plan created by the CBA." As Appellants claim, since the statute is an "obstacle[ ] to [Appellants'] recovery of unpaid [c]ontributions," the statute is preempted by ERISA. Appellants are incorrect. Indeed, section 1303(a) is superfluous: 49 P.S. § 1301 creates the statutory "right to lien" and expressly limits the right to file a mechanics' lien to contractors and subcontractors. 49 P.S. § 1301. Section 1303(a) simply restates—and there-

fore emphasizes—the discrete parties who are able to file a mechanics' lien in Pennsylvania. Thus, section 1303(a) does not constitute an improper "obstacle[ ] to [Appellants'] recovery of unpaid [c]ontributions"—it simply restates Pennsylvania's generally applicable mechanics' lien law. Regardless, section 1301 limits the right to file a mechanics' lien claim to "contractors" and "subcontractors"—and since Appellants' entire preemption claim is based upon section 1303(a)—Appellants' claim necessarily fails.

**6.** It is important to note that nothing in my dissent implies that Appellants are precluded from recovering the contributions that are due. Indeed, Appellants are free to pursue a civil action against the defaulting contractor and raise all appropriate claims. I simply believe that—under the specific language contained in Pennsylvania's MLL—Appellants do not have standing to file a mechanics' lien

## DISSENTING STATEMENT BY GANTMAN, J.:

I respectfully dissent from the majority's decision in this case because I do not think the Mechanics' Lien Law should be available under these circumstances, where the disputes arise from independent contracts between the general contractor and the union for fringe benefits contributions to be paid to the unions by the general contractor, and those contracts also predate any work done on Appellee's property. I believe the majority's "liberal construction" stretches the statute beyond the legislative intent under these facts.

Here, the claims asserted derive from contracts independent of and tangential to the work actually done on Appellee's property and are collateral to the construction agreement between the general contractor and Appellee. The general contractor owes the fringe benefits to the unions directly and only as a result of the hours worked; the benefits are not of or directly about the work done on the property. To be sure, the unions are entitled to collect their benefits per their contracts with the general contractor; but the unions already have the legal means to move against the general contractor to recover the fringe benefits owed. Allowing the unions to use the Mechanics' Lien Law to short-cut the recovery process under the guise of flexible statutory interpretation strains the spring of the statute too far, in my opinion, and in a manner the legislature did not intend.

Further, the majority's rationale essentially makes Appellee a surety for the wholly independent contractual obligations of the general contractor, which I think are too attenuated to fall under the protection of the Mechanics' Lien Law. Likewise, it effectively burdens the wrong entity.

claim for the unpaid employee benefit contri-

Thus, I would affirm the trial court's decision under the circumstances of these cases. Accordingly, I must dissent.